**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------X

| | |
|---|---|
| NAVCAN.DC, Inc. (previously known as Cascade Divide Data Centers, Inc.), DACH Holdings, LLC, Silverstein Realty Group, Inc., Silver Springs Development, Inc., GGH, Inc., and Residencial de Chihuahua 2001, S.A. de C.V. | : <br> : <br> :   **Case No. 23-cv-02267-LGS** <br> : <br> : |

Plaintiffs,

            -against-

Jeffrey Rinde and CKR Law LLP,

                   Defendants.

--------------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS

CONWAY & CONWAY
99 Park Avenue, 6th Floor
New York, New York 10016
(212) 938-1080
*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………................……………................……………...............……...ii

PRELIMINARY STATEMENT……………................……………................……………....................1

STATEMENT OF FACTS………..…………................……………................……………...............1

LEGAL ARGUMENT……………................……………................……………......................................6

    I.      Defendants Have Waived Their Contractual Right to Arbitration....…………..…….…6

    II.     The Court Should Reject Defendants' Arguments, Which Were Previously
            Made and Rejected During the AAA Arbitration, as to the Proper
            Arbitral Forum.…….....................................................................................................12

CONCLUSION….……………………………………………………………………………..17

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

Ahrens v. Dunkin' Brands, Inc.,
    2011 U.S. Dist. LEXIS 415, *15-16 (D. Conn. 2011)……….…………………………10

Ashcroft v. Iqbal,
    556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)………………………..………………6

Bankers Conseco Life Ins. Co. v. Feuer,
    2018 U.S. Dist. LEXIS 43828 (SDNY 2018)..…………..…………………..……..6, 16

Beijing Shougang Mining Inv. Co. v. Mongolia,
    2018 U.S. Dist. LEXIS 43828……………………………………………………..15

Bell Atl Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955 (2007)…………………………………………….……6

Cota v. Art Brand Studios, LLC,
    21-CV-1519 (LJL), 2021 WL 4864588, at *11 [SDNY Oct. 15, 2021]…………………9

In re Hellas Telecom. (Luxembourg) II SCA,
    555 BR 323, 346 [Bankr SDNY 2016]……………….…….……………….....................14

Judd Burstein, P.C. v Long,
    180 F Supp 3d 308, 315 [SDNY 2016]…..…………….……….…………………..14

Mcneil v. LVMH Inc.,
    2019 U.S. Dist. Lexis 85399 (SDNY 2019)…..………………………….....................7

Morgan v. Sundance, Inc.,
    142 S. Ct. 1708 (2022)…………….....................………………………………….8, 10, 11

Nadeau v. Equity Residential Props. Mgmt. Corp.,
    251 F. Supp. 3d 637, 641 (SDNY 2017)………...…….……….……….…....................9

PaineWebber Inc. v. Bybyk,
    81 F.3d 1193, 1198 (2d Cir. 1996)…………………........................................................7

Sarit v. Westside Tomato, Inc.
    2020 U.S. Dist. LEXIS 67074, *26 (SDNY 2020)……………………………………12

Schreiber v. Friedman,
    2017 U.S. Dist. LEXIS 221610, (EDNY 2017)……………………….……...10, 11, 12

Shaw Grp., Inc. v. Triplefine Int'l Corp.,
    322 F.3d 115, 120 (2d Cir. 2003)……………………...……………………………………7

Stanley v. A Better Way Wholesale Autos, Inc.,
    2018 U.S. Dist. LEXIS 137645, *17-18 (D. Conn. Aug. 15, 2018)…………………11, 12

Study Edge, LLC v. N.Y.C. Dep't of Educ.
    No. 20-cv-7122 (AJN), 2021 U.S. Dist. LEXIS 174546 (SDNY 2021)………………7, 8

Swierkiewicz v. Sorema N. A.,
    534 U.S. 506, 508 (2002)……………………………...…………….............................6

TransAtlantic Lines LLC v Amergent Techs, LLC,
    16 CIV. 3549 (PAE), 2017 WL 78511, at *6 [SDNY Jan. 6, 2017]……………….........13

**Statutes**

Fed. R. Civ. P. 12(b)(6) …………………………………………………………...…........6

Fed. R. Civ. P. 26(a)(1)……………………………………………………………………3

## PRELIMINARY STATEMENT

Plaintiffs NAVCAN.DC, Inc. (previously known as Cascade Divide Data Centers, Inc., "NAVCAN"), DACH Holdings, LLC ("DACH"), Silverstein Realty Group, Inc. ("SRG"), Silver Springs Development, Inc. ("SSDI"), GGH, Inc. ("GGH"), and Residencial de Chihuahua 2001, S.A. de C.V. ("Residencial," and collectively, "Plaintiffs"), by and through their undersigned counsel, Conway & Conway, hereby submit this Memorandum of Law in Opposition to Defendants Jeffrey Rinde ("Mr. Rinde") and CKR Law LLPs' ("CKR Law," and collectively "Defendants") Motion to Compel Arbitration and to Dismiss.

## STATEMENT OF FACTS

The instant dispute between the Parties began when Plaintiff NAVCAN initiated an arbitration proceeding (the "AAA Arbitration") against Defendants at the American Arbitration Association (the "AAA") by filing a Statement of Claim on October 29, 2021. Plaintiffs twice amended the October 29, 2021 Statement of Claim to add the other Plaintiffs as additional claimants. Plaintiffs proceeded to attempt to arbitrate their dispute with Defendants in good faith. However, at every step of the AAA Arbitration, Defendants sought to obstruct and delay the proceeding, and failed to comply with AAA rules and the arbitration panel's (the "Panel") orders. *See Exhibit 1, Letter dated October 31, 2022.*[1] The AAA Arbitration hearing dates were originally scheduled for October and November of 2022. These hearing dates were cancelled when Defendants failed to timely pay their arbitration fees. Defendants did eventually pay their overdue fees, and the Panel rescheduled the hearings for February of 2023. However, when an additional fee deposit from the Parties came due on September 30, 2022, Defendants again failed to make the payment. On October 31, 2022, Michael Maloney, Esq. ("Mr. Maloney"), counsel

---

[1] The October 31, 2022 Letter includes a non-exhaustive list of examples of Defendants' misconduct during the Arbitration.

for Defendants, advised the AAA that "I am advised that a transfer of funds has been initiated and receipt of funds is expected this week." *See Exhibit 2, October 31, 2022 Email.* This was a lie. On November 17, 2023, after giving Defendants almost an additional two months to meet their payment obligation, the Panel suspended the AAA Arbitration because Defendants had again failed to do so. *See Exhibit 3, Suspension Order*, stating "The Association has advised that full deposits were not received from [Defendants]. Therefore, in accordance with Rule R-57, all administration on this matter and further hearings are suspended[.]" The Panel set a new deadline of December 16, 2022 for Defendants to make their required payments. Despite continuing assurances that they would pay their fees, Defendants failed to make any payment by the December 16, 2022 deadline. Finally, on January 13, 2023, the Panel issued an Order terminating the AAA Arbitration, stating:

> "These proceedings and consideration of pending motions were suspended on November 17, 2022, as the result of Respondents' non-payment, and parties were directed to deposit such sums on or before December 16, 2022. The Association has advised that, despite assurances from Respondents that deposits would be made, required Respondents' deposits have not been made. Therefore, in accordance with Rule R-57, this arbitration is hereby terminated." *See Exhibit 4, Termination Order.*

Defendants, in their Motion, lie to the Court that "Plaintiffs declined to pay the deposits they owed to the AAA[,]" attempting to mislead the Court as to the who was at fault for the termination of the AAA Arbitration.[2] On November 15, 2022, the Parties received the document attached to Mr. Maloney's Declaration as Exhibit C (Docket No. 40-3), an estimate of future arbitration fees. On November 18, 2022, the Parties received an additional invoice from the AAA. However, at this point, as Defendants know, the AAA Arbitration *had already been*

---

[2] Plaintiffs note that on July 24, 2023, SDNY Magistrate Judge Valerie Figueredo recommended that Mr. Maloney, counsel for Defendants, be sanctioned pursuant to FRCP 11 in an unrelated matter "for filing a frivolous complaint that also contained false allegations." *See Exhibit 7, Report and Recommendation dated July 24, 2023.*

*suspended as a result of Defendants' non-payment of the previous invoice.* Plaintiffs never "declined to pay the deposits[.]" The deposits referenced never came due because the AAA Arbitration remained suspended until it was terminated. As the Panel made very clear in its termination Order, such termination was solely due to Defendants having failed to make their required deposits despite repeatedly assuring the AAA and the Panel that they would do so.

Upon termination of the AAA Arbitration, Plaintiffs initiated the instant case by filing a Summons and Complaint on March 16, 2023. Throughout the instant case, Defendants' egregious misconduct, including their utter disregard for this Court's Orders and the Federal Rules of Civil Procedure ("FRCP"), has continued. Plaintiffs served the Summons and Complaint on Mr. Rinde on April 4, 2023, and on CKR Law on April 11, 2023. Both Defendants intentionally defaulted, as they have done in numerous similar proceedings, failing to timely file an Answer or responsive motion despite Defendants' counsel having acknowledged Defendants' receipt and notice of Plaintiffs' Summons and Complaint. After being provided multiple extensions to appear by the Court and failing to do so, Defendants immediately appeared upon Plaintiffs' filing of their Motion for a Default Judgment pursuant to the Court's Order. Upon appearing, Defendants immediately began to employ the same delay tactics they used throughout the AAA Arbitration. Defendants ignored the Court's initial deadline (in reality the *fourth* such deadline, but the first after Defendants' appearance) for filing of the Parties' joint letter and case management plan and Plaintiffs' attempts to confer with them. The deadline to file the joint letter and proposed scheduling order was extended. The Parties submitted a proposed scheduling Order, and it was so ordered by the Court on June 1, 2023. Defendants have continued to fail to meet every deadline set forth in the Court's June 1, 2023 Order. Defendants failed to timely submit their initial disclosures required under FRCP 26(a)(1) by the June 22 deadline to do so.

Upon being notified by Plaintiffs they belatedly submitted disclosures woefully insufficient to meet their obligations. When the July 14, 2023 deadline for production of documents passed, Defendants had produced nothing to Plaintiffs. On July 17, 2023, they produced only documents they had been required to produce on June 22 with their initial disclosures (insurance policies). Defendants have produced no further documents. Plaintiffs have no doubt that Defendants will continue to behave in the manner they have since the start of this dispute in October of 2021.

Defendants, in their "Statement of Relevant Facts" attempt to minimize their role in defrauding Plaintiffs and shift the blame for their own wrongdoing to non-parties. Defendants' arguments in this regard are completely irrelevant to the instant Motion, and thus, Plaintiffs will not address them here. Plaintiffs do not contest that the Escrow Agreements between Defendants and each respective Plaintiff contain arbitration agreements. Plaintiffs have satisfied their contractual obligation to arbitrate the instant dispute with Defendants, and Defendants, by refusing to participate in the arbitration initiated by Plaintiffs, have waived their right to have this dispute arbitrated. Defendants' attempt to blame Plaintiffs for the high cost of the AAA Arbitration is ridiculous. Plaintiffs made every effort to reduce the costs of the proceeding, including by proposing to Defendants that the Parties agree that the arbitration be before a single arbitrator – a proposal Defendants rejected. Defendants are correct that Plaintiffs made several applications to the Panel during the course of the arbitration. These applications were necessitated by Defendants utter refusal to comply with the schedule set by the Panel, various Panel Orders, and AAA Rules, and their refusal to cooperate with Plaintiffs to any degree on any issue that arose. Plaintiffs met and conferred with Defendants' counsel on numerous occasions to

attempt to resolve numerous issues.[3] These meetings were never productive, as Defendants' counsel would either refuse to make commitments, or fail to follow through on the commitments he did make. The excessive fees billed to the Parties in arbitration were solely due to Defendants' continuous misconduct and refusal to cooperate. Defendants make conclusory statements that they never refused to pay their arbitration fees, always intended to pay them, and could not because of financial difficulties. They provide the Court with no evidence to support these statements. What the evidence before the Court shows is that Defendants did in fact refuse to pay their arbitration fees, even though Defendants repeatedly assured the AAA and the Panel that Defendants would pay their fees, and that the Panel terminated the AAA Arbitration as a result of Defendants' non-payment.

Unfortunately, Defendants have been rewarded for their continuous egregious misconduct to date. This dispute was originally scheduled to be resolved in Arbitration in November of 2022. Defendants' sanctionable delay tactics have worked to prevent Plaintiffs from having their claims heard. Defendants now ask the Court for a perverse and unconscionable result. Having successfully prevented Plaintiffs from having their claims heard in arbitration and forcing Plaintiffs to bring their claims in this Court, Defendants now ask the Court not just to return the Plaintiffs to the terminated AAA Arbitration on false promises that now they will pay their fees,[4] but in the case of five of the Plaintiffs, to force them to restart their proceedings

---

[3] Plaintiffs would note that while Defendants accuse Plaintiffs of failing to meet and confer on various issues with Defendants, the only purported evidence of this allegation provided by Defendants is an email attached to Mr. Maloney's improperly submitted Declaration in support of Defendants' June 14, 2023 Letter Motion as Exhibit A that very clearly evidences an attempt by Plaintiffs' Counsel to meet and confer with Mr. Maloney that Mr. Maloney ignored.

[4] The same false promises they repeatedly made to the AAA before the AAA Arbitration was terminated.

against Defendants from the beginning at another arbitration forum.[5] By their refusal to participate in the AAA Arbitration between the Parties, Defendants have waived their contractual right to arbitration of this dispute. For the reasons that will be detailed below, the Court should deny Defendants' frivolous Motion.

## **LEGAL ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Bell Atl Corp. v. Twombly, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss the Court "must accept as true all of the factual allegations contained in the complaint." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002). Similarly, with a "motion to compel arbitration, [the Court] accept[s] as true . . . [the] factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties." [Internal citations omitted]. Bankers Conseco Life Ins. Co. v. Feuer, 2018 U.S. Dist. LEXIS 43828.

Plaintiffs here have adequately alleged facts sufficient to state plausible claims upon which relief may be granted against Defendants with respect to each of Plaintiffs' causes of action. Plaintiffs have additionally adequately alleged that Defendants have breached their arbitration agreements with each respective Plaintiff, and thus that Defendants have waived their contractual right to arbitrate this dispute. If the Court is to accept as true the factual allegations

---

[5] As will be detailed below, Defendants made the same frivolous arguments they make in support of this proposition during the AAA Arbitration, even at times copying and pasting directly from their arbitration briefing. The Arbitration Panel, which had the authority to decide the proper arbitral forum, rejected Defendants' arguments.

included in Plaintiff's Complaint, the Court must deny Defendants' Motion to Compel Arbitration and to Dismiss.

**I.      Defendants Have Waived Their Contractual Right to Arbitration**

Plaintiffs do not contest that the Escrow Agreements between Defendants and each respective Plaintiff contain arbitration agreements. Plaintiffs have satisfied their contractual obligation to arbitrate the instant dispute with Defendants, and Defendants, by refusing to participate in the arbitration initiated by Plaintiffs, have waived their right to have this dispute arbitrated. Defendants state that "Pursuant to the FAA, the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.' Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996))." Here Plaintiffs have not "failed, neglected or refused to arbitrate." Plaintiffs did arbitrate their claims against Defendants. However, Defendants frustrated the completion of the arbitration between the Parties and caused its termination by their refusal to pay obligated fees. By doing so, Defendants have waived their contractual right to have the instant dispute arbitrated. Whether arbitration has been "foreclosed as a remedy" here is irrelevant – Defendants can no longer assert a contractual right to arbitrate. Through their own refusal to arbitrate and breach of the Parties' respective arbitration agreements, they have forfeited that right.

Defendants cite just two cases in support of the proposition that their motion to compel should be granted. In both cases, Study Edge, LLC, 2021 U.S. Dist. LEXIS 174546 and Mcneil, 2019 U.S. Dist. Lexis 85399, the respective courts engaged in an analysis of whether the non-waiving party was prejudiced to determine whether the defendant had waived its right to

arbitrate, which the Supreme Court of the United States later held to be impermissible, as will be detailed below. Neither case pertains to facts similar to those of the instant case. In Mcneil, the arbitration at issue had not yet been initiated by the relevant arbitration forum, and the non-paying defendant had actually paid its arbitration fees, albeit two weeks late. Here, in contrast, the Parties participated in arbitration for over a year and Defendants have not even bothered to pay the balance of fees still owed to the AAA despite their supposed newfound willingness to pay their fees. *See Exhibit 5, AAA Invoice*. In Study Edge, LLC the Court found that the plaintiff had failed to sufficiently allege a material breach of contract in alleging that the defendant, the Department of Education, had failed to appoint a dispute resolution officer to oversee an ADR proceeding between the parties within the period of time the plaintiff demanded. This is not remotely similar to what occurred between the Parties here. Plaintiffs here initiated an arbitration, in which Defendants participated for a time, until Defendants decided to stop paying their contractually obligated arbitration fees, resulting in the termination of the arbitration by the arbitration panel. Plaintiffs here have sufficiently alleged that Defendants materially breached the Parties' arbitration agreements by frustrating the completion of the AAA Arbitration.

As Plaintiffs previously noted in their response to Defendants' Letter Motion, dated June 15, 2023, the cases cited by Defendants to suggest that prejudice should be an important factor in the Court's analysis of waiver are no longer good law, as the Supreme Court of the United States has determined that courts *cannot* consider prejudice in analyzing waiver of an arbitration agreement. Defendants feebly attempt to distinguish the Supreme Court's ruling in regard to waiver in the context of arbitration agreements in Morgan v. Sundance, Inc., 142 S. Ct. 1708 (2022) by stating that the "case addressed the issue of waiver by litigating in court, not waiver by non-payment." However, the Supreme Court, in its Opinion, makes no such distinction. Rather

its holding is broad in regard to the principle of waiver. "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other." Id. Thus, the Supreme Court ruled that the question the relevant lower court must consider in its waiver analysis is a simple one - "Did Sundance, as the rest of the Eighth Circuit's test asks, knowingly relinquish the right to arbitrate by acting inconsistently with that right? Id. The question the Court must ask here is the same – did Defendants knowingly relinquish their right to arbitrate this dispute by refusing to participate in the arbitration of this dispute initiated by Plaintiffs by withholding their obligated fees? That question can only be answered in the affirmative.

Defendants' attempt to distinguish the Cota v. Art Brand Studios, LLC, 21-CV-1519 (LJL), 2021 WL 4864588, at *11 [SDNY Oct. 15, 2021] cited in Plaintiffs' Complaint, and Nadeau v. Equity Residential Props. Mgmt. Corp., 251 F. Supp. 3d 637, 641 (SDNY 2017) are similarly unavailing. In regard to Cota v. Art Brand Studios, LLC, Defendants argue that it is not the case here that Defendants are "unwilling" to pay their arbitration fees. This of course is directly contradicted by what actually occurred in the AAA Arbitration. It is clear that Defendants were "unwilling" to pay their obligated arbitration fees because they did not pay their obligated arbitration fees, despite repeatedly assuring the AAA and the Panel that they would do so. That Defendants now make the same false assurances to the Court does not change what has already occurred. Defendants further point to the Court's analysis of prejudice to the plaintiff in the Cota case, which for the reasons detailed above cannot be considered by the Court in its waiver analysis here. Defendants attempt to distinguish the Nadeau case, because in that case the defendant refused to pay fees from the outset of the arbitration and in this case Defendants paid

some fees and then later refused to pay additional fees. This distinction is irrelevant – in both cases the arbitration was terminated as a result of the respective defendants' non-payment of obligated fees. Defendants state that they "never outright refused to pay their respective share of arbitration costs[.]" This statement is false. Whether Defendants made an affirmative statement[6] to the AAA that they would not pay their fees is irrelevant. Defendants did not pay their fees. Thus, Defendants refused to pay their fees. Defendants again ask the Court to ignore their actual behavior and the evidence before it and rely on the same false assurances they previously made to the AAA.

Here, the Court must assess Defendants' actual behavior, by which it is clear that Defendants have waived their right to compel arbitration of this dispute. "Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.' To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other." [Internal citation omitted]. Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713. "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied… In other words, waiver may be inferred from the circumstances if it is reasonable do so." [Internal citation omitted]. Ahrens v. Dunkin' Brands, Inc., 2011 U.S. Dist. LEXIS 415, *15-16 (D. Conn. 2011). In the context of waiver of an arbitration agreement, "where a defendant has previously refused to submit to arbitration when the plaintiff was 'ready, able and willing to arbitrate its claim and arbitrators were standing by to hear it,' the defendant 'ought not in fairness be able to shift its position and force arbitration on [the plaintiff].' [Internal

---

[6] Plaintiffs agree that Defendants did not make such an affirmative statement. In fact, as is noted in the Panel's Termination Order, they repeatedly lied to the AAA indicating that they would pay their obligated fees, and even represented to the AAA that they had initiated a transfer of the required funds when they had not. *See Exhibit 2, October 31, 2022 email.*

citation omitted]. <u>Schreiber v. Friedman</u>, 2017 U.S. Dist. LEXIS 221610, (EDNY 2017). Courts in this Circuit have consistently held that behavior similar to that of Defendants amounts to waiver of the right to arbitrate.[7] <u>See Id</u>. ("The Court concludes that Friedman's failure to submit to arbitration, delay tactics, and noncompliance with the Rabbinical Courts' orders amount to a waiver of his right to compel arbitration.") <u>See also Stanley v. A Better Way Wholesale Autos, Inc.</u>, 2018 U.S. Dist. LEXIS 137645, *17-18 (D. Conn. Aug. 15, 2018) (Defendant held to have waived its right to compel arbitration where "[i]n the absence of any other explanation in the record, ABW's repeated failures to respond to the AAA or pay the required fees, followed by its opportunistic reversal after the AAA's decision to terminate the dispute and its current attempt to force Stanley to arbitration before a different body, smack of 'an intentional pattern of gamesmanship and delay.'") Here, Defendants initially submitted to arbitration, but engaged in delay tactics throughout the arbitration, repeatedly failed to comply with Panel orders, eventually refused to continue arbitration of the instant dispute by withholding their obligated arbitration fees, and now ask the Court to force Plaintiffs to arbitration before a different body. This is exactly the "intentional pattern of gamesmanship and delay" that Courts have found to result in the waiver of a party's right to compel arbitration. In fact, a United Stated District Court in the Southern District of New York has previously ruled that "in connection with Defendants' default in the AAA arbitration, the Court noted that Defendants' conduct appeared to 'smack of an intentional pattern of gamesmanship and delay.' <u>Stanley v. A Better Way Wholesale Autos, Inc.</u>, No. 17-cv-01215-MPS, 2018 U.S. Dist. LEXIS 137645, 2018 WL 3872156, at *7 (D. Conn. Aug. 15, 2018)[,]" where the defendants in that case had previously defaulted on their obligated

---

[7] Plaintiffs cited numerous cases in their pre-motion Letter dated June 15, 2023 that further support the proposition that a party's failure to pay obligated arbitration fees constitutes a breach of that party's arbitration agreement and waiver of that party's contractual right to arbitrate. *See Plaintiffs' June 15, 2023 Pre-Motion Letter, ECF Docket No. 41.*

arbitration fees at AAA resulting in the termination of the preceding arbitration. See Sarit v. Westside Tomato, Inc., 2020 U.S. Dist. LEXIS 67074, *26 (SDNY 2020). Thus, as in the Schreiber and Stanley cases, Defendants here have waived their right to compel arbitration.

Plaintiffs note that while, due to the Supreme Court's holding in Morgan v. Sundance, it is not necessary for Plaintiffs to demonstrate that Plaintiffs have been prejudiced in order to assert that Defendants have waived their right to arbitrate, in both the Schreiber and Stanley cases, the respective Defendants' dilatory tactics and resulting costs to the respective plaintiffs were sufficient to establish prejudice to the plaintiffs. See Id ("Especially where, as here, 'the record strongly suggests a deliberate strategy unilaterally designed to delay the arbitration proceedings,' courts have found that the costs involved in submitting a 'doomed AAA demand for arbitration, in filing its district court complaint,' and in defending a motion to compel are sufficient to constitute prejudice[,]") and Schreiber ("the costs that Schreiber has incurred are the result of the fact that Friedman initially refused to arbitrate and only sought to invoke his right to arbitrate after Schreiber filed suit. The Court accordingly finds that Schreiber has demonstrated sufficient prejudice to establish waiver.") If the Court is to consider whether Plaintiffs have been prejudiced by Defendants' refusal to arbitrate this dispute, Plaintiffs have. As detailed in Plaintiffs' Complaint, Defendants' dilatory tactics in arbitration resulted in excessive arbitration fees, and their frustration of the completion of the AAA Arbitration resulted in Plaintiffs incurring additional costs in filing their Complaint here. Defendants' behavior in the instant litigation has continued to force additional unnecessary costs on Plaintiffs, first when Defendants intentionally defaulted resulting in Plaintiffs preparing a motion for a default judgment that was rendered moot when Defendants belatedly appeared, and now in moving to compel arbitration despite having caused the previous arbitration between the Parties to be terminated.

II.     **The Court Should Reject Defendants' Arguments, Which Were Previously Made and Rejected During the AAA Arbitration, as to the Proper Arbitral Forum**

While it is Plaintiffs' view that returning this dispute to arbitration after Defendants prevented the completion of the AAA Arbitration between the Parties would be an unconscionable result, if the Court chooses to do so, it should reject Defendants arguments that five of the Plaintiffs should be required to restart their arbitration proceedings from the beginning in a different arbitral forum. Defendants here make the same arguments they had previously made to the AAA Arbitration Panel, and ask the Court to decide a question that has already been decided. During the AAA Arbitration, Defendants moved to dismiss the same five Plaintiffs' claims, contesting the AAA's jurisdictions on exactly the same baseless grounds they do here. The AAA Panel, which had the authority to decide the question as to whether or not the AAA was a proper forum for the claims, decided the issue, denying Defendants' motion. *See Exhibit 6, Panel Decision, dated November 1, 2022.* "Recent case law in this Circuit supports that, where the parties have agreed to arbitrate but not on an arbitral forum, and where one party has initiated an arbitration proceeding in a forum not precluded by the parties' agreement, it is for the arbitrator, not a court, to decide procedural questions governing the arbitration." TransAtlantic Lines LLC v Amergent Techs, LLC, 16 CIV. 3549 (PAE), 2017 WL 78511, at *6 [SDNY Jan. 6, 2017]. Thus, while the Court should deny Defendants' request that five of the Plaintiffs be forced to restart their proceedings against Defendants in a different arbitral forum because the issue has already been decided, Plaintiffs will address the frivolous nature of Defendants' arguments, yet another demonstration of Defendants' bad faith and willingness to mislead the Court, below.

Whether Defendants now affirmatively consent to arbitration before the AAA is irrelevant. Defendants, who drafted the arbitration agreements at issue, had the opportunity to

select their preferred arbitral forum when drafting the agreements. In the case of Plaintiff NAVCAN, Defendants did so, selecting the AAA. In the case of the other five Plaintiffs, Defendants chose not, leaving it to Plaintiffs to initiate arbitration proceedings in a forum of their choice. As Defendants know, because this issue has already been briefed and decided, "ambiguities in contract are construed against the drafter[,]" Judd Burstein, P.C. v Long, 180 F Supp 3d 308, 315 [SDNY 2016], and "A plaintiff's choice of forum is generally entitled to great deference." In re Hellas Telecom. (Luxembourg) II SCA, 555 BR 323, 346 [Bankr SDNY 2016]. During the AAA Arbitration, Defendants made identical frivolous arguments to the arbitration Panel in contesting the AAA Panel's jurisdiction to hear Plaintiffs' claims. The Panel rejected these arguments. Defendants argue, as they did in arbitration, that Defendants are prejudiced by arbitration at the AAA because "the AAA Commercial Rules prohibit depositions."[8] What Defendants fail to tell the Court is that the AAA Panel specifically allowed for the Parties to take depositions in the AAA Arbitration, stating in a May 23, 2022 scheduling order "If a Party wants to take one or more depositions, it shall meet and confer with the other side and try to reach agreement as to the same concerning the number and duration of depositions, if any, failing which an application in this regard shall be made to the Chair as discovery master by June 22, 2022." Defendants also fail to advise the Court, that despite being provided the opportunity to do so, Defendants never had any intention to take depositions in the AAA Arbitration. In fact, Defendants never noticed a deposition in that matter, never attempted to meet and confer with Plaintiffs in regard to potential depositions as directed in the May 23, 2022 scheduling order, and never made any application to the Chair to take depositions by June 22, 2022 or thereafter. This

---

[8] This is the sole reason that Defendants argue here that they would be prejudiced by arbitration at the AAA.

argument in regard to depositions was frivolous when it was raised by Defendants in arbitration and rejected by the Panel, and it remains frivolous now.

Defendants go on to repeat other frivolous arguments they made, unsuccessfully, during the AAA Arbitration. Defendants argue, as they did at the AAA, that Plaintiff SRG is required to arbitrate its claims in regard to the Escrow Agreement between SRG and Defendants at JAMS because an unsigned addendum [9] to a completely unrelated agreement contains a JAMS arbitration provision. The AAA Panel of course rejected this absurd argument. As Plaintiffs pointed out to Defendants when they raised the same case in support of the same argument for an ad-hoc arbitration during the AAA Arbitration, Defendants have misrepresented the holding of Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 149 and n.4 (2d Cir. 2021). In that case, involving a dispute between a Chinese company and Mongolia, the relevant arbitration agreement is included in a bi-lateral investment Treaty between the governments of China and Mongolia. In relevant part, the Treaty states "[i]f a dispute involving the amount of compensation for expropriation cannot be settled within six months after resort to negotiations ..., it may be submitted at the request of either party to an ad hoc arbitral tribunal." Id. There is simply no legal principle that an arbitration agreement that does not specify an arbitral forum requires arbitration before an ad hoc tribunal as Defendants suggest, and in fact, the footnote from the Beijing Shougang Mining Inv. Co. case quoted by Defendants does nothing more than provide a definition for "ad hoc arbitration." The Court in the Beijing Shougang Mining Inv. Co. matter simply ratified the forum explicitly identified in the arbitration agreement at issue there. At the risk of stating the obvious, a Treaty between two sovereign states on the opposite side of the planet has no bearing whatsoever on this dispute.

---

[9] SRG disputes the validity of this unsigned addendum, an issue that was again raised in arbitration, and that the AAA Panel deferred ruling on until the arbitration hearing.

Defendants' intentions are laid bare in making these already-rejected and absurd arguments that five of the Plaintiffs should be forced to restart their proceedings against Defendants from the beginning. As they have from the very beginning of this dispute in October of 2021, Defendants seek only to delay resolution of Plaintiffs' claims, and impose additional costs on Plaintiffs. Plaintiffs would posit that Defendants' attempt to relitigate the issue of the proper arbitral forum is further evidence of Defendants' waiver of their contractual right to arbitrate this dispute. Having been denied their request at the AAA to force five of the Plaintiffs to restart arbitration with Defendants in a different forum, Defendants stopped paying their obligated arbitration fees and caused the AAA Arbitration to be terminated, in hope that Plaintiffs would either discontinue the pursuit of their claims or that Defendants would have an opportunity to make the same request, on the same basis, in a different forum here. Thus, the Court should deny Defendants' Motion to Compel Arbitration, but in the event that the Court is to grant the motion, the Court should order that the AAA Arbitration be resumed and deny Defendants' request to force five of the Plaintiffs to restart their proceedings in a different forum.[10]

---

[10] Plaintiffs further request that if the Court compels arbitration, the Court stays the instant case rather than dismissing it, as based on Defendants' course of conduct, it is inevitable that the Parties will eventually require further intervention from the Court if ordered back to arbitration. "The Second Circuit has held that a district court must stay an action—rather than dismiss it—if a party so requests, even if all the claims are sent to arbitration." Bankers Conseco Life Ins. Co. v. Feuer, 2018 U.S. Dist. LEXIS 43828, *22.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court issue an Order denying Defendants' Motion to Compel Arbitration and to Dismiss in full, awarding Plaintiffs the costs associated with responding to this Motion, and granting such further relief as the Court deems just.

DATED:      New York, New York
               July 25, 2023

CONWAY & CONWAY,

By: _____
    Kevin P. Conway, Esq. (6946)
    kpc@conway-conway.com

Conway & Conway
99 Park Avenue, 6th Floor
New York, NY 10016
(212) 938-1080

*Attorneys for Plaintiff*