UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
NAVCAN.DC, INC., et al.,                                    :
                                      Plaintiffs,           :
                                                            :          23 Civ. 2267 (LGS)
                    -against-                                :
                                                            :       **OPINION AND ORDER**
JEFFREY RINDE, et al.,                                      :
                                      Defendants.           :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

 Plaintiffs NAVCAN.DC, Inc., f/k/a Cascade Divide Data Centers, Inc. ("NAVCAN");

DACH Holdings, LLC ("DACH"); Silverstein Realty Group, Inc. ("SRG"); Silver Springs

Development, Inc., assignee of Cordella Developments Corp. (including its assignee, "Silver

Springs"); GGH, Inc. ("GGH") and Residencial de Chihuahua 2001, S.A. de C.V. ("Residencial")

bring claims for breach of contract, fraudulent concealment, misrepresentation and omission,

breach of the duty of good faith and fair dealing, breach of fiduciary duty, conversion, unjust

enrichment, breach of retainer agreement and breach of arbitration agreement.  Defendants

Jeffrey Rinde and CKR Law LLP move to compel arbitration and dismiss this action in favor of

arbitration.  For the reasons below, Defendants' motion is denied.

I. **BACKGROUND**

 The following facts are taken from the Complaint and the parties' submissions on this

motion.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

 **A.  The Arbitration Agreements**

 Defendant Rinde is the managing partner of Defendant CKR Law LLP.  Each of the

Plaintiffs entered into virtually identical escrow agreements with Defendants (the "Agreements").

Plaintiffs do not contest that each agreement contains a valid arbitration clause.  The agreement

between Defendants and NAVCAN ("NAVCAN Agreement") states, "The party seeking to refer the matter to arbitration shall pay any associated fees to the arbitration service, as required."  The agreement designates the American Arbitration Association ("AAA") as the arbitration service if the parties cannot agree on a different service.  None of the agreements between Defendants and the other Plaintiffs (collectively, "Other Agreements") contain a provision allocating the cost of arbitration or designating an arbitration service.  Paragraph 16 of the DACH agreement is illustrative:

> Governing Law/Disputes.  This agreement shall be interpreted according to and subject to New York Law.  The Escrow Parties agree to do their utmost to ensure that any disputes between them are settled equitably and amicably and where possible without resort to arbitration.  In the event of any differences or dispute of whatever nature arising from this Agreement (which shall include any failure to agree on any matter which requires the Escrow Parties' agreement for the purposes of implementation of this Agreement) or any other matter related thereto which cannot be settled by direct negotiation within thirty (30) days after either of the Escrow Parties has notified the other parties in writing of the existence of the dispute, such differences or dispute shall be referred to and finally settled by binding arbitration in City, County and State of New York.

**B.  The Arbitration and Its Termination**

A conflict arose between NAVCAN and Defendants after NAVCAN did not receive the benefits of a certain bank instrument or return of NAVCAN's escrow payment.  Pursuant to its escrow agreement, NAVCAN filed a Statement of Claim with the AAA on October 29, 2021, to commence arbitration proceedings ("Prior Arbitration") after the parties were unable to resolve the dispute.

Other Plaintiffs, having substantially the same claims against Defendants, were subsequently joined to the Prior Arbitration pursuant to AAA procedures.  DACH, SRG, Silver Springs and GGH joined the arbitration on January 20, 2022.  Residencial joined the arbitration on February 22, 2022.  A panel of three arbitrators (the "Panel") was assigned to the case on April 13,

2

2022.  Defendants appeared in the Prior Arbitration; objected to arbitrating before the AAA disputes involving DACH, SRG, Silver Springs, GGH and Residencial; participated in the selection of arbitrators; answered the statements of claim; asserted counterclaims and third-party claims and paid fees billed by the AAA.  Plaintiffs and Defendants engaged in discovery, including serving requests for production and producing thousands of pages of documents.

In November 2022, pursuant to AAA Rule R-57, the Panel notified the parties that the matter was suspended because Defendants had not paid outstanding fees and that proceedings may be terminated under the Rule if payment was not received.  On January 13, 2023, the Panel terminated the arbitration pursuant to Rule R-57 because "despite assurances from [Defendants] that deposits would be made, required [Defendants'] deposits have not been made."  On March 16, 2023, Plaintiffs filed a Complaint bringing an action for damages and equitable relief in the district court.  On July 7, 2023, Defendants filed the instant motion to compel arbitration and requested that the action be dismissed, or stayed pending arbitration.

## II.    STANDARD

In deciding a motion to compel arbitration, courts "apply a standard similar to the one applicable to a motion for summary judgment."  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019).[1]  Courts must consider "all relevant, admissible evidence submitted by the parties" and must "draw[] all reasonable inferences in favor of the non-moving party."  *Id.*

## III.    DISCUSSION

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

Defendants' motion to compel arbitration is denied because they have waived their right to arbitrate. "Like contract rights generally, a right to arbitrate may be modified, waived or abandoned." *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008) (summary order); *accord Murray v. DCH Toyota City*, No. 20 Civ. 7383, 2021 WL 1550074, at *3 (S.D.N.Y. Apr. 20, 2021). "A refusal by a party to arbitrate upon demand duly made by the other side constitutes such a waiver. . . . [C]rucial to the establishment of waiver in the arbitration context is the presence of conduct by the party seeking to compel arbitration which reflects a positive and unequivocal election to ignore his or her arbitration rights." *Zhang*, 317 F. App'x at 28 (finding no waiver where moving party had never initiated arbitration proceedings). "[A]ny doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995); a*ccord Levy v. Credit Plus, Inc.*, No. 21 Civ. 5541, 2023 WL 2644352, at *10 (S.D.N.Y. Mar. 27, 2023). Defendants' alternative request to stay the proceedings is denied for the same reasons.

## A.  The Waiver Question Was Not Delegated to the Arbitrator

Defendants argue that an arbitrator should decide the issue of waiver. This argument is rejected for two reasons. First, it was not included in Defendants' initial memorandum of law; it was first raised in Defendants' reply. Second, the waiver question was not conspicuously assigned to the arbitrator in any of the Agreements and therefore should be decided by a federal court.

The general presumption in the Second Circuit is that "threshold questions of arbitrability . . . should be resolved by the court and not referred to the arbitrator." *Dr.'s Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019). But the "[p]arties to an arbitration agreement can . . . agree to arbitrate gateway questions of arbitrability." *Gingras v. Think Fin.,*

*Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021).  The party moving to compel arbitration of arbitrability bears the burden of producing this evidence, and "the arbitration agreement is determinative."  *Id.* at 317-18.

Arbitration agreements "[r]arely . . . directly state whether the arbitrator or the court will decide the issue of arbitrability," and the agreements at issue are no exception.  *See id.* at 318. "[C]ourts must look to other provisions of the agreements to see what contractual intention can be discerned from them."  *Id.*  "Where the parties explicitly incorporate procedural rules that empower an arbitrator to decide issues of arbitrability, that incorporation may serve as clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator."  *Id.*  But, "context matters."  *Id.*  When an arbitration agreement is "broad and expresses the intent to arbitrate all aspects of all disputes, this -- coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability -- constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator."  *Id*. at 318-19.  By contrast, when the arbitration agreement is "narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite clear and unmistakable inference of intent to arbitrate arbitrability."  *Id.* at 319; *accord Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, No. 22 Civ. 5212, 2023 WL 2138693, at *6 (S.D.N.Y. Feb. 21, 2023).

The arbitration provisions at issue contain expansive language committing the parties to arbitrate "any differences or dispute of whatever nature arising from" the agreement.  The

NAVCAN Agreement allows the parties to agree on an arbitration service, but designates the AAA to administer the arbitration should they not agree on another service.  The agreement specifies that AAA rules will be applicable in that event.

These terms do not indicate a "clear and unmistakable" intent to delegate the question of arbitrability to the arbitrator.  The agreements contain no explicit indication that the issue of waiver should be delegated to the arbitrator.  The incorporation of the AAA rules, which would place the issue of waiver within the arbitrator's purview, is conditional and arises only if the parties do not agree to another service with another set of rules.  No other agreement between the parties specifies an arbitrator or incorporates any arbitral rules or procedures.  The parties did not agree to reserve the issue of arbitrability to an arbitrator.

### B.   Defendants Waived the Right to Arbitration Through Their Conduct

The Federal Arbitration Act ("FAA") "embodies a national policy favoring arbitration." *Dr.'s Assocs., Inc.*, 934 F.3d at 250.  The "purpose underlying arbitration [is] to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co*., *Ltd.*, 57 F.4th 372, 378 (2d Cir. 2023).

Even where parties have agreed to arbitrate, a party can waive its right to arbitrate. *See* 9 U.S.C. § 2 (providing that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").  Courts maintain "a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002); *accord Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (summary order).  "An inquiry into whether an arbitration right has been waived is factually specific and not susceptible to bright line rules." *Thyssen Inc.*, 310 F.3d at 105.

Defendants waived the right to arbitrate by failing to pay AAA arbitration fees, having been warned that the AAA would terminate the Prior Arbitration for non-payment.  On October 31, 2022, Counsel for Defendants informed the AAA that a transfer of overdue funds had been initiated and that the AAA could expect to receive them that week.  The AAA never received the outstanding fee, which led to the suspension of the arbitration on November 17, 2022.  Defendants were ordered to tender payment by December 9, 2022, and were warned that failure to do so by December 16, 2022, could result in termination of the proceedings.  On January 13, 2023, the Panel terminated the arbitration "as a result of [Defendants'] non-payment[.]"  Defendants to date have not paid the outstanding arbitration fees that they owe to AAA, though they recently secured the financial resources to pay any arbitration fees moving forward.

Defendants were on notice that the Prior Arbitration would be terminated if they did not pay their outstanding balance to AAA.  Defendants did not pay.  Defendants are in default on the Prior Arbitration and have waived the right to arbitrate the disputes that were before the Panel.

Defendants argue that termination does not result in waiver when arbitration has not been foreclosed as a remedy.  They claim that the termination was not with prejudice and that the Panel did not, and would not, refuse to administer the claim.  The cases Defendants cite, however, do not support this proposition.  Defendants cite *Study Edge, LLC v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 7122, 2021 WL 4198417, at *3 (S.D.N.Y. Sept. 14, 2021), but that case merely notes that waiver is present where a party's conduct forecloses the availability of arbitration as a remedy. The case does not support the proposition that such conduct is a necessary condition for finding waiver.  Defendants also cite *McNeil v. LVMH Inc.*, No. 18 Civ. 11751, 2019 WL 2191786, at *5 (S.D.N.Y. May 21, 2019), but that case is inapposite because arbitration proceedings had never

commenced prior to litigation, so the moving party was not in default. *Id.* at *3. These cases are also not binding authority.

Defendants also argue that Plaintiffs are partially to blame for the termination of the Prior Arbitration, noting that Plaintiffs also did not pay all AAA fees. Nothing in the record indicates that the Panel suspended or terminated the Prior Arbitration because Plaintiffs were overdue on any AAA fees. The Prior Arbitration remained suspended until it was terminated. The Panel's order made clear that termination was due to Defendants having failed to make their required deposits despite repeatedly assuring the Panel that they would do so. The Prior Arbitration Detail Statement from June 15, 2023, states that Defendants still owe AAA $28,828.75. Neither the order suspending nor terminating the Prior Arbitration references Plaintiffs' conduct.

Defendants argue that their failure to pay was not in bad faith. But bad faith is not required to find that a party defaulted in arbitration. Because Defendants' conduct waived their right to arbitrate in any forum, there is no need to reach the request that disputes with certain Plaintiffs proceed before JAMS.

Defendants' request to dismiss or stay this case in favor of arbitration is denied as moot. *See* 9 U.S.C. § 3 (Litigation can be stayed pending arbitration "provid[ed] the applicant for the stay is not in default in proceeding with such arbitration.").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and dismiss Plaintiffs' claims is DENIED.

The Clerk of Court is respectfully directed to close the motion at Dkt. 49.

Dated: October 11, 2023
New York, New York

8

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE