**Monday, July 28, 2025 at 17:49:22 Eastern Daylight Time**

**Subject:** FW: GGH, Inc - Loan Offer for $10.92M
**Date:** Monday, July 28, 2025 at 11:41:31 AM Eastern Daylight Time
**From:** Jeffrey Rinde
**To:** Jeffrey Rinde
**Attachments:** Straightline Capital - Escrow Agreement - MOU - GGH, Inc..docx, Straightline Capital - GGH, Inc. - MOU (SJD Edits).docx

**Jeffrey A. Rinde**
Jingsh Law Firm LLP, Managing Partner
1230 Avenue of the Americas
Floor 16
New York, New York 10020

http://www.jingsh.com

**From:** Jeff Rinde <jrinde@ckrlaw.com>
**Date:** Saturday, July 26, 2025 at 6:21 PM
**To:** Jeffrey Rinde <jrinde@jingshusa.com>
**Subject:** FW: GGH, Inc - Loan Offer for $10.92M

**Jeffrey A. Rinde**
Managing Partner, CKR LAW LLP

# C K R | law

GLOBAL PRESENCE. LOCAL EXPERTISE.™

U.S. Cell: +1 (646) 342-6066
E: jrinde@ckrlaw.com

Confidentiality Notice: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. If you have received this e-mail in error, please notify CKR by return e-mail and destroy the original message and all copies thereof.

**From:** Jeff Rinde <jrinde@ckrlaw.com>
**Date:** Wednesday, August 2, 2023 at 11:48 PM
**To:** Michael Maloney <mmaloney@felicellolaw.com>
**Subject:** FW: GGH, Inc - Loan Offer for $10.92M

**Jeffrey A. Rinde**
Managing Partner, CKR LAW LLP
Managing Partner, CKR LAW (UK) Limited
Registered Foreign Lawyer, England and Wales

# C K R | law

GLOBAL PRESENCE. LOCAL EXPERTISE.™

*EXHIBIT 11*

1330 Avenue of the Americas | 14th Floor
New York, New York 10019
T:  +1 (212) 259-7300
F:  +1 (212) 259-8200
U.S. Cell: +1 (646) 342-6066
H.K. Cell: +852 6735 5518
China Cell: +86 150 0022 5843
E:  jrinde@ckrlaw.com
W: www.ckrlaw.com

AKRON | ATLANTA | BEIJING | BELIZE | BOSTON | BRITISH VIRGIN ISLANDS
CANADA | CAPE TOWN | CLEVELAND | CURITIBA | DJIBOUTI | DUBAI | GUANGZHOU
HARTFORD | HONG KONG | JERICHO | JOHANNESBURG | LONDON
LOS ANGELES | MIAMI | MEXICO CITY | MILAN | MOSCOW | NAPLES | NEW YORK
NYON | ORANGE COUNTY | ORLANDO | OSAKA | PANAMA CITY | PARIS | ROME | SAN DIEGO
SAN FRANCISCO | SEADOONE | SEYCHELLES | SHANGHAI | ST. PETERSBURG
TEL AVIV | TOKYO | TRINIDAD AND TOBAGO | WASHINGTON, D.C | WILMINGTON

Confidentiality Notice: This e-mail is intended only for the person or entity to which it is addressed and may contain informationthat is privileged, confidential or otherwise protected from disclosure. If you have received this e-mail in error, please notify CKRby return e-mail and destroy the original message and all copies thereof.

**From:** Rick Siegel <rick@safaritrading1411.com>
**Date:** Tuesday, May 1, 2018 at 1:48 AM
**To:** Jeff Rinde <jrinde@ckrlaw.com>
**Cc:** don@euwanacapital.com <don@euwanacapital.com>, dault@straightline-capital.com <dault@straightline-capital.com>
**Subject:** Fwd: GGH, Inc - Loan Offer for $10.92M

Jeff.  It appears this group is ready to go.  Can you review the escrow agreement ASAP.  See below

Sent from my iPhone

Begin forwarded message:

> **From:** "Don Hirsch" <don@euwanacapital.com>
> **Date:** April 30, 2018 at 11:48:12 AM EST
> **To:** "'David Ault'" <dault@straightline-capital.com>, "'Rick Siegel'" <rick@safaritrading1411.com>
> **Subject: FW: GGH, Inc - Loan Offer for $10.92M**
>
> Here is what I send on Wednesday.
>
> Best regards,
>
> Don Hirsch
> Euwana Capital LLC
> 224.245.5200 (o)
> 312.576.7268 (c)
>
> **From:** Don Hirsch [mailto:don@euwanacapital.com]
> **Sent:** Wednesday, April 25, 2018 3:04 PM
> **To:** 'David Ault'
> **Cc:** 'Rick Siegel'
> **Subject:** FW: GGH, Inc - Loan Offer for $10.92M
>
> Hey David,
> See attached
>
> Best regards,

Don Hirsch
Euwana Capital LLC
224.245.5200 (o)
312.576.7268 (c)

**From:** brianrcummings@aol.com [mailto:brianrcummings@aol.com]
**Sent:** Wednesday, April 25, 2018 1:12 PM
**To:** don@euwanacapital.com
**Cc:** warren@oldplantersofcapeann.org; spencer@oldplantersofcapeann.org
**Subject:** Fwd: GGH, Inc - Loan Offer for $10.92M

Hi Don,

We have edited the MOU and Escrow Agreement.  Please let us know if you need anything else
from us at this time.

Kind regards,
Brian



April 13, 2018

GGH, Inc.
7 Jewett Hill
Ipswich, MA 01938
Attention: Mr. Spencer Kalker

Mr. Kalker,

This letter will confirm that **Straightline Capital, LLC** a Minnesota limited liability company, (and/or its affiliates, agents and assigns) (collectively, "Straightline") is committed to working on a transaction as further described herein with GGH, Inc. ("GGH") with an address at 7 Jewett Hill, Ipswich, MA 01938 which would include the provision of a term debt investment facility offered by Straightline, or an affiliate of Straightline, in connection with the expansion and operation of a commercial medical grade cannabis facility and business, as further described on Exhibit A hereto (the "Proposed Transactions").

## PART ONE—NONBINDING PROVISIONS

The parties wish to commence negotiating definitive written agreements providing for the Proposed Transactions and necessary related documents (the "Definitive Agreements"). The execution of any Definitive Agreements would be subject to agreeing the terms and conditions of such Definitive Agreements which will be based on the terms and conditions set out in Exhibit A and would also be subject to approval by Straightline's governing body. Straightline confirms that it is satisfied with the initial due diligence investigation and findings carried out in regard to GGH and the project which will be carried out by GGH.

1.  BASIC TRANSACTIONS

Based upon the information currently known to Straightline, the findings of the business, legal and financial due diligence, and subject to the other conditions set forth herein, the execution of Definitive Agreements is expected to be consummated on or before (60) days of receipt of this executed letter.

2.  OTHER TERMS

In the Definitive Agreements, each party would make customary comprehensive representations and warranties to the other, would agree to customary and other covenants to be agreed and would provide customary indemnities and other protections to the other party. The utilization by GGH of the funds that are made available under Definitive Agreements would be subject to the satisfaction of certain conditions as follows:

(a)     GGH issuing a certificate confirming the truth and accuracy of the representations and warranties of GGH as set forth in the Definitive Agreements;

(b)     GGH issuing a certificate confirming the absence of pending or threatened litigation, claims, investigations or other matters that materially and adversely affect GGH's undertakings under the Definitive Agreements;

(c)     Straightline and GGH will have performed or complied in all material respects with all agreements required by the Definitive Agreements to be performed or complied with by them; and

(d)     such other conditions as are customary in transactions of this type.

## PART TWO—BINDING PROVISIONS

The parties, intending to be legally bound, agree to the following legally enforceable paragraphs of this letter.

3.    ACCESS

During the Exclusivity Period (as defined below), GGH will afford Straightline and its duly authorized representatives full and free access (at reasonable times) to relevant books, records, documents, data and personnel of GGH relating to the Proposed Transactions, subject to Paragraph 5.

4.    EXCLUSIVE ENGAGEMENT AND DEALING

In consideration of the time, effort and expense incurred to date and anticipated to be incurred by Straightline in connection with its consideration of the Proposed Transactions, GGH agrees as follows:

(a)     From and after the date of the execution of this letter by GGH through and including the date that is (60) sixty days after the date of such execution date (the "Exclusivity Period"), none of GGH or its respective officers, directors, partners, members, shareholders, employees, affiliates, agents, advisors or representatives (collectively, "Representatives") will, directly or indirectly, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept, or consider any proposal of, or provide any information to, any person other than Straightline and its Representatives relating to any term debt to GGH, or to the Proposed Transactions or any similar transaction for borrowed money;

(b)     GGH will immediately notify Straightline regarding any contact between GGH or its Representatives and any other person regarding any such offer or proposal or any related inquiry,

If GGH or its Representatives should breach this Paragraph 4, GGH agrees to compensate

| Deleted: investment in or |
| Deleted: investment |
| Deleted: s |

| Deleted: and, if made in writing, furnish Straightline a copy thereof |

Straightline for_direct damages incurred as a result of such breach. _For the avoidance of doubt, the receipt by GGH of an offer to lend shall not be considered a breach of this Agreement.

5.    CONFIDENTIALITY

The parties hereby agree to maintain the confidentiality of the Proposed Transactions and of this letter, including its purpose, terms, content and existence, as well as all information and data provided by GGH or its Representatives to Straightline or its Representatives, or by Straightline or its Representatives to GGH or its Representatives pursuant hereto (collectively, "Confidential Information"). Each of the parties shall use at least the same degree of care to safeguard and to prevent the disclosure, publication, dissemination, destruction, loss or alteration of the other party's Confidential Information as it employs to avoid unauthorized disclosure, publication, dissemination, destruction, loss, or alteration of its own information (or information of its customers) of a similar nature, but in no case less than reasonable care. Neither GGH or its Representatives on the one hand nor Straightline or its Representatives on the other hand may use any of such Confidential Information for any purpose other than to evaluate, negotiate and perform the Proposed Transactions and the other transactions contemplated hereby. Neither GGH or its respective Representatives on the one hand nor Straightline or its Representatives on the other hand shall disclose any Confidential Information to any other person without the disclosing party's prior written consent, except to its Representatives who shall have a valid need to know in connection with the purpose of this letter and who are bound by confidentiality obligations to the disclosing party at least as extensive as the provisions of this Paragraph 5. Each party agrees to take all steps reasonably necessary to insure the compliance by all of its Representatives with this provision concerning confidentiality.

Notwithstanding the foregoing, the receiving party or its Representatives may disclose Confidential Information without the disclosing party's prior written consent, and such information shall no longer be deemed Confidential Information for all purpose of this Letter, only to the extent such information: (a) is already known to the receiving party or its Representatives as of the date of disclosure hereunder without breach of any confidentiality obligation; (b) is already in possession of the public or becomes available to the public other than through the act or omission of the receiving party or any of its Representatives; (c) is in the opinion of legal counsel to the receiving party or its Representatives required to be disclosed under applicable law or governmental order, decree, regulation or rule; or (d) is acquired independently from a third party that represents that it has the right to disseminate such information at the time it is acquired by the receiving party or its Representatives.

In the event that the receiving party or any of its Representatives is required by law or governmental order, decree, regulation or rule to disclose any of the Confidential Information, the receiving party agrees to (i) promptly notify the disclosing party of such requirement and (ii) reasonably assist the disclosing party in seeking a protective order or other appropriate remedy without being required to become a party to any litigation or incur more than de minimis out-of-pocket expenses). In the event that such protective order or other remedy is not obtained, (a) the receiving party or its Representative, as the case may be, may disclose only that portion of the Confidential Information which it is advised by counsel is required to be disclosed, and shall exercise its reasonable efforts to obtain assurance that confidential treatment will be accorded

such portion of the Confidential Information, and (b) the receiving party shall not be liable for such disclosure unless such disclosure was caused by or resulted from a previous disclosure by receiving party (or any of its representatives) not permitted by this Letter.

The receiving party acknowledges and agrees that the disclosing party would not have an adequate remedy at law and would be irreparably harmed in the event that any of the provisions of this Paragraph 5 are not performed in accordance with their terms or are otherwise breached. It is accordingly agreed that the disclosing party and its affiliated companies shall be entitled to equitable relief, including any injunction and specific performance, in the event of any breach of the provisions of this Paragraph 5, in addition to all other remedies available to the disclosing party at law or in equity.

The Confidential Information shall remain the property of the disclosing party, and the disclosing party may demand the return or destruction thereof at any time upon giving written notice to the receiving party, within thirty (30) days of receipt of such notice, the receiving party shall, at its option, return, or cause its Representatives to return, or destroy, or cause its Representatives to destroy, all of the Confidential Information (both written and electronic) in its or its Representatives' possession. Notwithstanding anything to the contrary herein, it is understood and agreed that the receiving party may retain one copy of the Confidential Information for archival purposes, which copies shall be subject to the provisions hereof until the same are destroyed.

The obligations of the parties under this Paragraph 5 with respect to any Confidential Information shall continue for a period of two years after the disclosure to the receiving party thereof.

6.    COSTS

Except as otherwise provided herein, GGH and its Representatives on the one hand and Straightline and its Representatives on the other hand will be responsible for and bear all of its/their respective costs and expense (including any broker's or finder's fees and the expense of their representatives) incurred at any time in connection with the preparation, negotiation and execution of this letter and with pursuing or consummating the Proposed Transactions.

7.    TERMINATION

The Binding Provisions will automatically terminate upon the earliest of the following (the "Termination Date"): (i) the last day of the Exclusivity Period, (ii) execution of the Definitive Agreements by all parties, (iii) the mutual written agreement of Straightline and GGH, that the termination of the Binding Provisions will not affect the liability of a party for breach of any of the Binding Provisions prior to the termination. Upon termination of the Binding Provisions, the parties will have no further obligations under this letter, except that Paragraph 4 (solely with respect to violations thereof occurring before the date of such termination) and Paragraph 5 and Paragraph 9 will survive such termination and remain in full force and effect.

8.   EFFECT OF LETTER

The provisions of Paragraphs 1 and 2 of this letter and Exhibit A hereto are intended only as an expression of interest on behalf of Straightline and GGH, are not intended to be legally binding on any party, and are expressly subject to the negotiation and execution of appropriate Definitive Agreements. In addition, nothing in this letter should be construed as an offer or commitment on the part of Straightline to submit a definitive proposal or on GGH to accept any definitive proposal. Except as expressly provided in Paragraphs 3 through 9 (or as expressly provided in any binding written agreement that the parties may enter into in the future), no past or future action, course of conduct, or failure to act relating to the Proposed Transactions, or relating to the negotiation of the terms of the Proposed Transactions or any Definitive Agreements, will give rise to or serve as a basis for any obligation or other liability on the part of the parties. Without limiting the foregoing, Straightline and its Representatives shall have no liability to any of GGH and its Representatives if the Proposed Transactions or other transactions contemplated hereby are not consummated for any reason. Furthermore, and without limiting the foregoing, except as otherwise expressly provided for herein, GGH and its Representatives shall have no liability to any of Straightline and its Representatives if the Proposed Transactions or other transactions contemplated hereby are not consummated for any reason.

9.   MISCELLANEOUS

   (a)   Entire Agreement. The Binding Provisions supersede all prior agreements, whether written or oral, between the parties with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.

   (b)   Modification. This letter may only be amended, supplemented, or otherwise modified by a writing executed by the parties.

   (c)   Governing Law.  This letter and all matters relating to or arising out of the Proposed Transactions and the other transactions contemplated hereby and the rights of the parties (sounding in contract, tort, or otherwise) will be governed by and construed and interpreted under the laws of New York, without regard to conflicts of laws principles that would require the application of any other law.

   (d)   Jurisdiction; Service of Process.  Any dispute arising out of or in connection with this letter or the Proposed Transactions shall be referred to and finally resolved by arbitration under New York Arbitration Rules, by three arbitrators appointed in accordance with the Rules.  The seat, or legal place, of arbitration shall be in New York. The arbitration shall be conducted in English. Each party acknowledges and agrees that this Paragraph 9(d) constitutes a voluntary and bargained-for agreement between the parties. Process in any proceeding may be served on any party anywhere in the world.

   (e)   Counterparts. This letter may be executed in one or more counterparts, each of

which will be deemed to be an original copy and all of which, when taken together, will be deemed to constitute one and the same document, and will be effective when counterparts have been signed by each of the parties and delivered to the other parties. A manual signature on this letter whose image shall have been transmitted electronically will constitute an original signature for all purposes. The delivery of copies of this letter, including executed signature pages, by electronic transmission will constitute effective delivery of this letter for all purposes.

If you are in agreement with the foregoing, please sign and return one copy of this letter, which thereupon will constitute our understanding with respect to its subject matter and a binding agreement with respect to the Binding Provisions.

Very truly yours,

**STRAIGHTLINE CAPITAL, LLC**

By: _____
      Name:    David Ault
      Title:     Managing Partner

Agreed to as to the Binding Provisions
on January___, 2018.

**GGH, INC.**

By: _____
     Name:  Mr. Spencer Kalker
     Title:  Principal



Straightline Capital

| | | |
|---|---|---|
| **Lender**Lender | Straightline Capital, LLC ("Straightline Capital") | Deleted: Investor<br>Formatted Table |
| **Borrower** | GGH, INC. ("GGH") | |
| **Loan** Facility | $10,920,000.00 US Dollars in a term debt loan ("Loan Amount"). | Deleted: Investment |
| **Advance Schedule** | (10) equal advances of US $ 1,092,000.00 US Dollars (each, a "Payment Advance"), on date of initial closing and every 30 days thereafter for the additional (9) Payment Advances with all funds being sent to an agreeable client account or pre-nominated account of the Borrower; barring any additional time required by governmental, or other agencies regulatory reviews required for transferring large sums of money between parties electronically. | |
| **Repayment; Maturity** | 15-year final maturity. Principal and interest payments monthly on the first day of each month commencing on the (12) twelth month after the initial disbursement of $1,092,000.00 US dollars ("Initial Disbursement"). The investment repayment shall be based on a (20) twenty-year straight-line amortization schedule with a balloon payment of the remaining principal and accrued interest on the final maturity date. There shall be a (30) thirty-day cure period, except on final maturity. No interest will accrue on the investment for the first sixteen (16) months following Initial Disbursement., | Deleted: amount during the (10) ten months of Payment Advances, nor the (6) six months' grace period, which totals a (16) sixteen-month period from the initial investment. |
| **Interest** | 3.75% per annum, offered at a fixed rate. | |
| **Prepayment** | At any time, in whole or in part, without penalty, upon (60) sixty days' prior written notice. | |
| **Use of Proceeds** | the expansion and operation of a commercial medical grade cannabis facility and business, as further described on Exhibit A attached hereto. | |
| **Collateral** | First-priority, security interest on corporate assets of the Borrower, subject to customary exceptions for certain existing liens to be determined. | |
| **Bank Instrument** | The Loan Facility requires the issuance of a Bank Instrument. Such Bank Instrument shall be issued by a National Bank with at least $5 billion in assets or equivalent international bank. | |
| **Escrow Funds** | The Borrower will transfer escrow funds of up to $420,000.00 (Four Hundred, Twenty Thousand) US Dollars, to acquire a Bank Instrument ("BI"), substantially in the form of Exhibit B hereto, needed to satisfy lender requirements for securing financing in the Loan Amount; provided that Borrower has received a written statement from the issuer of the BI setting out the general amount, terms and conditions of the BI that is contingent on confirmation that the escrow funds have been deposited. Such funds shall be provided directly to the designated escrow | Deleted: the<br>Deleted: the required<br>Deleted: the<br>Deleted: investor<br>Formatted: Underline<br>Deleted: amount |

Straightline Capital, LLC

Investment, Financing, and Consulting



Straightline Capital

IOLTA account of the Escrow Agent under terms of an acceptable Escrow Agreement among the Borrower, Straightline Capital and the Escrow Agent. No fees, costs or expenses shall be due and payable to the Escrow Agent or the Lender unless and until the Borrower has received a copy of the BI verified by the Borrower to its satisfaction.

| Deleted: between |

| Deleted: ¶ |
| Deleted: Investor |

**Information Covenants**    Lender will have the right to conduct an independent review of the Project at anytime.

**Other Covenants**    Other covenants customary for transactions of this type.

**Representations and Warranties**    Customary for transactions of this type.

| Deleted: ¶ |
| Deleted: ¶ |
| Formatted: Space Before: Auto, Line spacing: single |
| Deleted: Right of Refusal ... [1] |

**Closing Date**    Estimated to be (60) Days from the date the Escrow Payment is received and confirmed by CKR LAW, LLP.

**Offer Expiration**    This Memorandum of Understanding ("MOU") will expire with the proposed investment offer at 5:00 PM, Eastern Standard Time (EST) on Friday, April --, 2018.

| Deleted: 20 |

**Governing Law**    Any dispute resolution will be under Arbitration Laws in the State of New York.

Straightline Capital, LLC
Investment, Financing, and Consulting



Straightline Capital

<u>SCHEDULE A</u>
Business Description
(see attached)

Straightline Capital, LLC
Investment, Financing, and Consulting